### THE PEOPLE v. JAMES TAUGHER.

*Criminal law—Larceny—Intent.*

Where, in a prosecution for larceny, it appears that the respondent's possession of the property was lawful in the first instance, his mere refusal to deliver it to the owner on demand will not warrant a conviction.

Exceptions before judgment from Muskegon. (Dickerman, J.) Submitted on briefs October 25, 1894. Decided December 7, 1894.

Respondent was convicted of the crime of larceny. Conviction reversed, and respondent discharged. The facts are stated in the opinion.

*Jerome E. Turner*, for respondent.

*A. A. Ellis*, Attorney General, and *Charles B. Cross*, Assistant Prosecuting Attorney, for the people.

GRANT, J. The respondent was convicted, under a common-law information, of the larceny of a buggy. The entire evidence upon which he was convicted is stated in the record as follows:

"That on the 19th day of July, 1893, Mrs. Taugher, wife of the defendant, came to the city of Muskegon with a horse and buggy, and while in said city her buggy was smashed by an electric car, and that Fred W. Thompson, superintendent of the electric railway, procured of Peter Damm, complaining witness in this cause, a buggy for the use of Mrs. Taugher, to enable her to return to her home, —the buggy to be returned by her on the following day; that Mrs. Taugher did not return the buggy; that afterwards, and on the 25th day of July, 1893, Mrs. Taugher and defendant, James Taugher, came together to said city of Muskegon with said buggy, and were met on one of the streets of said city by said Thompson and said Peter Damm; that Thompson said to Damm: 'Here is your buggy; now, take it, and I will pay for one day, and they must pay for the rest;' that at this time defendant was in the buggy, and his wife on the sidewalk, close to the buggy; that Peter Damm then laid his hand on one of the thills of the buggy, and said, 'This is my buggy, and I want it right here, now;' that then Mrs. Taugher said to Thompson, 'When are you going to fix my buggy?' that Thompson replied: 'I have nothing to do with it; you must see Mr. Nims, the president of the company, about it; that defendant did not leave the buggy, and that Damm made no further effort to obtain the buggy; that defendant said, 'Let me have the buggy to take my wife to Nims' office, and I will return it on my way back,' to which Peter Damm consented, and released his hand from the thill of the buggy; that this conversation occurred about 11 o'clock in the forenoon; that Taugher and wife

went to Nims' office, Taugher remaining in the buggy while his wife went to Nims' office, and were seen there and in the street in front of the office by Peter Damm, and that defendant remarked to Damm, 'We are waiting for Mr. Nims;' that the buggy was not returned to Damm, but was driven by Taugher and wife out to their farm, about 4 miles from the city of Muskegon, the said farm being the home of defendant, and the place where Mrs. Taugher wanted to go on the day of the accident to her buggy. The next day, Damm drove out to the farm, saw Taugher, and told him he had come for the buggy. Taugher told him that his wife was out picking berries, and had the buggy with her. Taugher also said he had two horses,—a colt and an older one. Taugher then had one horse hitched to a cultivator, and a colt was seen by Damm running in a pasture on the farm. Taugher also told Damm that his wife would not give up the buggy until her own was fixed, and told Damm that he should go to the street-car company for his buggy, to which Damm replied, 'You want me to have a lawsuit to accommodate you?' and Taugher said, 'I guess you will have to.' That Damm then searched Taugher's premises, but did not find the buggy; that Damm then returned to the city, and caused the arrest of Taugher for the larceny of a buggy; * * * that, at the time of Taugher's arrest at the farm, Taugher told the officer that he (Taugher) never stole a buggy; that his wife went to town, and met with an accident, and that she got the buggy from Thompson, and still had it in her possession; that he (Taugher) had nothing to do with it whatever, and that the buggy was then in the barn; that at the time of defendant's arrest the officer did not search the barn or premises of Taugher, but brought defendant to the city of Muskegon, and the next day went again to Taugher's premises with Damm, and searched the farm, but did not find the buggy; that on the same day, and after his return to the city of Muskegon, the officer went to the jail where defendant was confined, and asked him where the buggy was; that defendant said in response that the buggy was up in the barn; that the officer then said to defendant: 'You know better; it was not there yesterday, and it is not there to-day;' that Taugher inquired if the officer had been up to the farm, and was told 'Yes;' that the officer then told defendant that he had made inquiries of Mrs. Taugher, and that she told him that the buggy was not there to-day,

and was not there yesterday; that defendant thereupon told the officer that it was no use to pick him, as he would get nothing out of him; that defendant also told the officer 'that may be some friends of mine in town may have the buggy;' that the officer asked for their names, and was told by Taugher that he would not give their names,—that he would not put anybody in trouble."

The respondent introduced no evidence.

It is contended by the attorney for the people that the respondent intended to steal the buggy from the outset, and that he requested and obtained the consent of Mr. Damm to use the buggy temporarily with felonious intent. We do not think that a felonious taking is established by the proof. He was in the lawful possession of the buggy when Damm approached him upon the street and demanded possession. Damm, by placing his hand upon the thill, did not recover possession.

The people rely upon the case of *People v. Camp*, 56 Mich. 548. In that case the respondent obtained possession of a horse from a boy, the son of the owner, who evidently had no authority to act for his father, and afterwards secreted him.

A felonious taking is essential to establish the crime of larceny at the common law. Respondent's possession was lawful until the demand. He would be liable in a civil action of replevin or trover, but no criminal intent is shown.

It follows that the conviction must be set aside, and the respondent discharged.

The other Justices concurred.