## PEOPLE v. CHAPMAN.

1. CRIMINAL LAW—LARCENY BY CONVERSION—EVIDENCE.

In prosecution of two brothers in the building business for larceny by conversion of money given them with which to pay taxes where one to whom money was paid cashed check by own indorsement and paid same to other brother, where latter denied having knowledge it was for specific purpose of paying taxes and record fails to disclose sufficient proofs to warrant submitting question of latter's guilt to jury, his conviction and sentence are set aside and he discharged (Act No. 328, § 362, Pub. Acts 1931).

2. SAME—LARCENY BY CONVERSION—PAYMENT OF TAXES—REASONABLE DOUBT.

In prosecution of two brothers in the building business for larceny by conversion of money complaining witness asserted had been given accused for purpose of paying taxes, where it appears no time was set for payment thereof, amount of payment to accused was substantially more than taxes due on the property involved, the margin between crime charged and a mere breach of an agreement to pay the taxes was so slight that the conviction and sentences should not stand, there being a reasonable doubt that check of complaining witness was accepted for sole purpose of paying taxes (Act No. 328, § 362, Pub. Acts 1931).

Appeal from Wayne; Marschner (Adolph F.), J. Submitted April 15, 1943. (Docket No. 86, Calendar No. 42,168.) Decided May 19, 1943.

George and William Chapman were convicted of larceny by conversion. Reversed and defendants discharged.

*Edward N. Barnard,* for appellants.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Richard Nahabedian* and *Harold Helper,* Assistant Prosecuting Attorneys, for the people.

BOYLES, C. J. Defendants were convicted on trial by jury on charges of larceny by conversion, contrary to the provisions of section 362 of the penal code, Act No. 328, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115–362, Stat. Ann. § 28.594). Motion for new trial was made and denied and each defendant was sentenced to 2½ to 5 years in State prison. On appeal, the only question raised that might require reversal is whether the verdict was contrary to the great weight of the evidence, or, more properly stated, whether the evidence was sufficient to sustain a verdict of guilty beyond a reasonable doubt.

The prosecution claims that one James Galanis, the complaining witness, entrusted to the defendants $116.36 for the specific purpose of paying taxes on a lot purchased by him in the transactions with the defendants. The defendants claim that this money was paid as a part of the purchase price of the lot, that their agreement to pay the taxes merely gives rise to a civil liability, and that no crime was proven.

By the testimony of James Galanis, the complainant, it appeared that George Chapman came to his home in River Rouge, representing himself as a builder and inquired about Galanis' desire to build a home. This was in September, 1940. Galanis stated he had a lot, but no gas or water. Chapman stated he would have to get a lot with these things "because I want to get money through F. H. A." After several subsequent calls, George Chapman stated he had found a suitable lot, provided Galanis found it so. The price for the lot was agreed upon at $450. Galanis saw the lot and was always fully satisfied with reference to that part of the transaction. George Chapman received $75 to be used as a deposit on the lot and he gave a receipt written on a Chapman Brothers Building Company letterhead, signed by George Chapman individually. In it, George Chapman acknowledges receipt of $75 from James S. Galanis as part payment for the lot, and indicates that the total price of the lot was $450 and there was a balance due of $375. The transaction for the purchase of the lot was closed, and title taken in the name of James Galanis. Because Galanis didn't understand these things very well, he engaged his brother-in-law, Samuel Nakis, to act for him, and gave him the $450. Galanis fully understood that this $450 was for the lot in full, and that back taxes had to be paid out of it. At the time this deal was closed, George Chapman was present, Samuel Nakis representing his brother-in-law, and Mr. Albright representing Lamphar & Company (the lot owner), $258.64 was paid to Mr. Albright at that time, $75 had been previously paid as a deposit, which made a total of $333.64 paid to Mr. Albright, and a check for $116.36 was given to Chapman Brothers Building Company "to pay the taxes." This made a total of $450. Samuel Nakis made the

disbursements for the lot. Nakis gave a check to George Chapman for $116.36, which check was payable to Chapman Brothers Building Company but indorsed and cashed by George Chapman alone. A receipt was signed "Chapman Brothers Building Company by George Chapman," which acknowledged receipt "from Samuel J. Nakis $116.36 for taxes on lot 797." Subsequently, a contract was entered into, signed by George Chapman on behalf of Chapman Brothers Building Company, to build a home for Galanis for $4,600. Due to failure to complete arrangements for a Federal housing loan, the house was not built. The taxes were not paid. Galanis admitted that William Chapman later came to him and told him he could not put through the F. H. A. loan, that building costs had gone up. Galanis testified that Chapman said:

"If you wanted to call the deal off (he said), here is your abstract and here is your deed, whatever money we have we will give to you. I am sure. Absolutely."

Apparently none of the parties knew the exact amount of the taxes. The amount had been estimated by the abstract examiner, and as a matter of fact the taxes actually amounted to $75.57. Nakis testified:

"There was never any date set when the taxes were to be paid on this $116. I didn't set no date. There was no date set."

At the close of the people's case, defendants' counsel moved that the jury be directed to bring in a verdict of not guilty as to William Chapman. The only proof we can find to connect William Chapman with the matter at the close of the people's case was that William Chapman had filed in the office of the

county clerk a certificate of doing business under the assumed name of Chapman Brothers Building Company, and the fact that George Chapman had used that name in the transactions with Mr. Galanis. Subsequently, William Chapman took the stand and admitted he had received the money from George Chapman (who had cashed the check by his own indorsement), testified that this was the balance of the $450 for the lot, and denied any knowledge that it was for the specific purpose of paying taxes. The record fails to disclose sufficient proofs to warrant submitting to the jury the question of the guilt of William Chapman. His conviction and sentence must be set aside and he is discharged from the indictment.

While there is considerable more doubt as to whether the conviction of George Chapman is contrary to the great weight of the evidence, the testimony of the complaining witness himself raises more than a reasonable doubt that George Chapman accepted the check for $116.36 for the sole specific purpose of using it to pay taxes. It was the exact balance of the purchase price of the lot, it was not the correct amount of the taxes (which were only $75.57), there was no understanding as to when the taxes were to be paid. Nakis, who acted for Galanis in the deal, and who obviously was most familiar with the matter, testified:

"It was not the Lamphar people who told me how much the taxes were going to be on there. No sir, because we already—the attorney's opinion. I mean the attorney examined the abstract for Mr. Chapman, on behalf of my brother-in-law. They arrived at the figure $116.36 because the abstract showed that certain taxes are due, and I presumed that Mr. George Chapman come over to the county building and got the bills for it. And at the time the deal was

closed, they deducted the difference between one and the other. In other words, this was just a deal of checking up an abstract to see if the title was clear and as to how much taxes showed on the abstract."

George Chapman testified:

"*Q.* In other words you received the amount of $116.36 from Mr. Nakis on behalf of Mr. Galanis to pay taxes, is that right?

"*A.* The particular money—I didn't tell him that I would use that same money to pay taxes. I told him that I would see that the Chapman Brothers Building Company paid the taxes.

"*The Court:* What did you want the $116 for then?

"*A.* That was the difference in what he had paid on the lot and what was still owed."

On the record before us, the margin between the crime of larceny by conversion and a mere breach of an agreement to pay the taxes is so slight that we conclude the convictions and sentences should not stand. Considering the testimony on the question of the great weight, it does not sufficiently preponderate for the people to sustain conviction. There is nothing to indicate that more convincing proofs might be adduced by the people on a retrial.

Convictions set aside and defendants discharged.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSH-NELL, and SHARPE, JJ., concurred.