## GARRAS *v.* BEKIARES.

1. CONTRACTS—CONSTRUCTION OF SIMULTANEOUSLY-EXECUTED AGREEMENTS.

   Where two agreements between the same parties were executed the same day and related to the same subject matter they should be construed together.

2. SALES—TRANSFER OF TITLE—CONSIGNMENT.

   Defendant's sale of merchandise received from plaintiff on consignment did not constitute a conversion thereof where, under written contract for consignment, the title remained in plaintiff until sold by defendant.

3. TROVER AND CONVERSION—MONEY—JUDGMENT—ASSUMPSIT—TORT.
  In action by consignor against consignee to recover agreed balance due on open running account, judgment was properly entered in assumpsit rather than in tort for conversion where defendant was only required to pay plaintiff the invoiced price for merchandise delivered and plaintiff was not entitled to the specific or identical moneys collected by defendant from those to whom he had sold the merchandise.

4. SAME—IDENTIFIABLE MONEY.
  Money in any form is generally regarded and treated as property, and it is well settled that an action will lie for the conversion thereof where there is an obligation to keep intact or deliver the specific money in question and where such money can be identified.

Appeal from Genesee; Bishop (Clifford A.), J. Submitted May 16, 1946. (Docket No. 95, Calendar No. 43,417.) Decided June 3, 1946.

Case by Samuel J. Garras against William Bekiares for conversion of property. Judgment for plaintiff in assumpsit. Plaintiff appeals. Affirmed.

*Blackney & Cameron,* for plaintiff.

*Joseph & Joseph,* for defendant.

STARR, J. Plaintiff, doing business as the Evergood Ham Company, was engaged in the processing of meat products in Detroit. In February, 1938, the parties made a verbal agreement whereby plaintiff was to deliver merchandise to defendant "on consignment" and defendant was to sell the same to stores and other customers in a specified territory in this State. This arrangement was continued until July 7, 1939, when the parties entered into a "consignment agreement," which provided in part:

"Party of the first part (plaintiff) agrees to consign certain goods, wares and merchandise, and the

party of the second part (defendant) agrees to accept on consignment certain goods, wares and merchandise ordered from the party of the first part,

"It is agreed by and between the parties hereto that title to, property in, and right to possession to said goods, wares and merchandise, and to all other goods, wares and merchandise ordered by the said party of the second part of said party of the first part, within one year from date hereof, shall remain in said party of the first part, *until sold* by the party of the second part.

"It is further agreed that all sales made by the said party of the second part shall be for cash only, and the proceeds received therefrom shall be and remain the property of the party of the first part. * * * All sales shall be reported promptly and be settled for to the party of the first part. The amount of recompense or commission due party of the second part shall be the amount for which said articles are sold in excess of the cost of said articles, goods, wares or merchandise, as represented by a consignment memo or invoice given by the party of the first part to the party of the second part at the time of receipt of shipment of said articles, goods, wares and merchandise on consignment. * * *

"Party of the second part agrees to make report of all goods, wares and merchandise on hand every five days during the life of this contract to the party of the first part, and to make due settlement and payment, if not already made, for any and all consignment goods sold."

On the same date the parties entered into an "assignment" agreement, which provided in part:

"Whereas, the first party (plaintiff) has, prior to this date, and still is shipping goods, wares and merchandise to the second party (defendant) on consignment, and, whereas, it is the desire of the second party to assign to the first party all of his outstanding accounts receivable to the first party

whether now due or to become due in the future, and also, assign all accounts receivable for goods, wares and merchandise sold hereafter, now, therefore, it is hereby agreed:

"(1) That the second party agrees to sell, assign and transfer and does hereby sell, assign and transfer to the first party all outstanding accounts receivable as the same are created in the second party's business from and by sales of merchandise therein."

Although the consignment agreement provided that it was for a one-year period, the parties apparently continued to do business under these two agreements until about October, 1942. At that time plaintiff claims to have discovered that defendant had not properly accounted for merchandise sold and for money collected. The parties then met and agreed upon the amount that defendant owed plaintiff, and on December 3, 1942, they executed a settlement agreement, which provided in part:

"Whereas, second party (defendant) has heretofore obtained merchandise in the nature of meat products from first party (plaintiff), on consignment under the terms of a written agreement heretofore entered into between the parties hereto; and

"Whereas, second party has disposed of said merchandise contrary to the terms of said agreement, and wilfully converted the same or the moneys derived from the sale of the said merchandise to his own use and benefit; and

"Whereas, it is the mutual desire of the parties hereto to amicably adjust and terminate the differences which have arisen as a result of the foregoing;

"Now therefore it is mutually agreed as follows:

"1. Second party agrees to, and does herewith assign, transfer and turn over unto first party all of the accounts receivable set forth in an itemiza-

tion attached hereto and called 'exhibit A,' being in the total sum of $792.82.  *  *  *

"2.  Second party does herewith assign, transfer, and set over to first party, a Ford 122 panel truck, model 91 C, 1940 model, engine No. 5414181.  *  *  *

"3.  In addition to the foregoing second party agrees to pay to first party the sum of $4,188.21, payable in the following manner: $50 payable on January 2, 1943, and a like sum of $50 on the first day of each and every month thereafter until the full amount of $4,188.21 has been paid.  It is agreed that if the second party shall default in the payment of any of the foregoing instalments promptly when due, that in such event, the full balance shall become due and payable forthwith without any notice of any kind or nature by first party to second party, and shall be payable in full on demand.

"4.  First party agrees that in the event second party shall have paid to him the sum of $2,688.21 in the manner hereinabove set forth in paragraph 3, then first party shall give to second party a credit for the unpaid balance of $1,500, and shall execute to second party a receipt in full and release from all of the obligations set forth herein."

In pursuance of this settlement agreement defendant paid plaintiff sums aggregating $200.  He thereafter defaulted in his agreed monthly payments, and in January, 1944, plaintiff began the present suit in trespass on the case.  In his declaration plaintiff alleged that defendant had made fraudulent reports of his sales and accounts receivable and that he had collected accounts belonging to plaintiff and had converted the money to his own use.  He also alleged that on December 3, 1942, "an accounting was had" and it was agreed that defendant was indebted to him in the amount of $5,781.03.  He further alleged that, to apply upon this indebtedness, defendant had assigned and de-

livered to him accounts receivable in the amount of
$792.82 and an automobile of the value of $800, and
had paid to him sums aggregating $200, which left
a balance due of $3,988.21. In his answer defendant
admitted this indebtedness and that he had promised
to pay plaintiff this amount, but he denied the al-
legations that he had made fraudulent reports and
that he had converted merchandise or money to his
own use. At the conclusion of the trial the court
entered judgment in assumpsit for the agreed
balance of $3,988.21, but expressly denied plaintiff's
right to recover in trespass on the case. Plaintiff
appeals, and his only contention is that the judg-
ment should have been in tort instead of in assump-
sit.

There is no dispute as to the amount of the judg-
ment, and the only question before us on this appeal
is whether plaintiff was entitled to a judgment in
tort or in assumpsit. The consignment agreement
and the assignment agreement, which were executed
simultaneously on July 7, 1939, and related to the
same subject matter, should be construed together.
It should be noted that the consignment agreement
expressly provided "that title to  *  *  *  mer-
chandise ordered by the said party of the second
part (defendant)  *  *  *  shall remain in said
party of the first part (plaintiff), *until sold* by the
party of the second part." Therefore, under this
provision, when defendant sold the merchandise,
title passed to him and from him to his customers.
His sale of the merchandise did not constitute a con-
version thereof.

The consignment agreement further provided that
every five days defendant was to report all mer-
chandise on hand, and make payment for merchan-
dise sold by him on the basis of invoices furnished
by plaintiff. With plaintiff's consent, defendant

sold merchandise to his customers on open accounts and collected the accounts. The record indicates that plaintiff carried a running account with defendant in which he was charged for merchandise delivered to him and credited with payments he made. Although the assignment agreement provided in general terms for the assignment and transfer of all defendant's accounts receivable to plaintiff, the record does not show specifically what money, if any, he collected on these accounts and failed to account for. When the parties terminated their business dealings in 1942, they had an accounting and determined the amount defendant owed plaintiff on the basis of their open running account of debits and credits. It should be noted that defendant was not required to deliver to plaintiff the specific or identical moneys which he collected for merchandise sold or on accounts receivable, but was only required to pay plaintiff the invoiced price for merchandise delivered to him. Therefore, as plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion.

The present case is controlled by our decision in *Globe & Rutgers Fire Ins. Co. of New York* v. *Fisher,* 234 Mich. 258, in which the plaintiff brought an action of trespass on the case against defendant insurance agents to recover for the conversion of certain insurance premiums. In reversing a judgment for plaintiff in trespass on the case, we said (pp. 259–262):

"The record discloses * * * that defendants were to issue policies in plaintiff company in the usual way, collect the premiums, make their reports, and remit the amount collected less their commissions on the 15th day of each month. * * *

"We have pointed out that the defendants here were not required by their arrangement with the company to turn over to it the identical money or checks received in payment for premiums, their arrangements contemplated the sending of their check for the amount due on the 15th of each month; we have also pointed out that trespass on the case for conversion is maintainable for money when trover would lie under the former practice. In *Alfred Shrimpton & Sons* v. *Culver,* 109 Mich. 577, it was held:

" 'Trover is not maintainable for money unless there be an obligation on the part of the defendant to return the specific money intrusted to his care.'
\*    \*    \*

"Here the agreement between the parties, it is conceded, did not provide and did not contemplate that plaintiff was entitled to the specific money or checks which came to defendants' possession in payment for premiums; it contemplated the payment by check of the balance due and payable by defendants on the 15th of each month. \*    \*    \*

"The plaintiff may not recover where the undisputed evidence establishes that he is not in fact entitled to the possession, and never was entitled to the possession of the specific thing claimed to have been converted."

"There can be   \*    \*    \*   no conversion of money, unless there was an obligation on the part of defendant to deliver specific money to plaintiff."   65 C. J. p. 23, § 24.

"Though money is property which it is often difficult to identify, it is well settled that an action of trover will lie for its conversion when such identification is possible, and there is an obligation to deliver the specific money in question."   26 R. C. L. p. 1101, § 8.

"Money in any form is generally regarded and treated as property, and it is well settled that an

action will lie for the conversion thereof, where there is an 'obligation to keep intact or deliver the specific money in question, and where such money can be identified." 53 Am. Jur. p. 811, § 8.

See, also, *Thrift* v. *Haner,* 286 Mich. 495; *Alfred Shrimpton & Sons* v. *Culver,* 109 Mich. 577.

We conclude that under the above authorities and the facts and circumstances shown by the record, plaintiff was not entitled to a judgment in tort. In view of this conclusion it is unnecessary to consider or determine the effect of the settlement agreement which the parties executed on December 3, 1942.

The judgment in assumpsit is affirmed. Defendant may recover costs on this appeal.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, and NORTH, JJ., concurred. BUSHNELL, J., took no part in the decision of this case.