PEOPLE v CHRISTENSON

Docket Nos. 63672-63674. Argued October 7, 1980 (Calendar No. 5).—
Decided November 23, 1981.

Bernhardt D. Christenson was convicted by a jury in Washtenaw
Circuit Court, William F. Ager, Jr., J., of three counts of
larceny by conversion. The defendant's business, Washtenaw
Active Homes, Inc., purchased modular homes from the manu-
facturer, Active Homes of Marlette, and sold them to purchas-
ers who qualified for financing by the Farmers Home Adminis-
tration (FHA). The three complainants made sales agreements
and construction contracts with the defendant's company and
"progress payments" were to be made to the defendant as he
required them from the money loaned to the complainants by
the FHA, if the purchasers were satisfied that the work had
been done. A representative of the FHA was required to cosign
the checks for the progress payments. After certain progress
payments had been made, the defendant ceased work on the
houses because of financial difficulties, and later was adjudi-
cated bankrupt. The defendant was accused of using the prog-
ress payments in issue to pay debts other than those incurred
in performing the work for which the payments had been
made. The trial court denied the defendant's motion for a
directed verdict of acquittal, in which the defendant contended
that he was not guilty of larceny by conversion as a matter of
law because there was no evidence that the complainants had
not received the work for the progress payments they made.
The Court of Appeals, Danhof, C.J., and V. J. Brennan and

REFERENCES FOR POINTS IN HEADNOTES

[1, 4, 5] 18 Am Jur 2d, Conversion § 26.
    50 Am Jur 2d, Larceny § 39.
    Nature of property or rights other than tangible chattels which
        may be subject of conversion. 44 ALR2d 927.
[2, 4, 5] 18 Am Jur 2d, Conversion §§ 6, 53.
    50 Am Jur 2d, Larceny § 39.
[3, 4, 5] 18 Am Jur 2d, Conversion § 53.
    50 Am Jur 2d, Larceny § 23.
[4, 5] 18 Am Jur 2d, Conversion § 25 et seq.
[6] 18 Am Jur 2d, Conversion § 10.

Carroll, JJ., affirmed in an unpublished per curiam opinion (Docket Nos. 78-1283—78-1285). Defendant appeals.

In an opinion by Justice Fitzgerald, joined by Chief Justice Coleman and Justices Kavanagh, Williams, Levin, and Ryan, the Supreme Court *held:*

The element of conversion was not established in this case because title to the funds as well as possession passed to the defendant.

1. The purpose of the statute prohibiting larceny by conversion is to cover one of the offenses against property not covered by common-law larceny, in which a person with lawful intent obtains possession of another person's property but subsequently converts the property to his own use. Larceny by conversion is a crime against possession and not against title; a person cannot convert his own funds. Thus, if an owner intends to part with title as well as possession, there can be no crime of larceny.

2. In this case, there is no testimony that there was not sufficient work in place to justify the amount of the progress payments. There is no testimony that the defendant represented that the checks would go directly to Active Homes of Marlette rather than to Washtenaw Active Homes, and he is not charged with conversion of funds belonging to Active Homes of Marlette. Although the representative of the FHA may have been acting under the misconception that Washtenaw Active Homes was an agent of Active Homes of Marlette, it is clear from the representative's testimony that the misconception was never conveyed to him by the defendant. In any event, there is no testimony that the complainants misunderstood the relation of the defendant's company to Active Homes of Marlette. They knew that payments were being made to Washtenaw Active Homes and there is no evidence that the complainants intended to retain any title to the progress payments. Thus, title as well as possession of the progress payments passed to the defendant and, accordingly, there can be no crime of larceny by conversion on these facts.

3. Even if the defendant was not the intended owner of the progress payments but merely a trustee of the funds, the element of conversion has not been established. The prosecutor contends that conversion is established by the fact that the complainants gave the money to the defendant for a specific purpose, to pay for the homes or for site preparation, but that the defendant did not use it for that purpose. However, there was no agreement that the defendant would apply the *specific* funds he received from the complainants for particular work to

pay the laborers and materialmen responsible for that work. There was no requirement that the defendant establish a separate trust account for each complainant in which he would deposit that particular complainant's funds. It is beyond dispute that the defendant had the contractual obligation to pay the debts of the work in place for which he received progress payments from the complainants. However, there was nothing to preclude the defendant from paying for those debts with funds other than the money he received from the complainants. Although the facts of this case may support civil actions against the defendant by complainants and Active Homes of Marlette, they do not support a conviction of larceny by conversion.

Justice Moody concurred in the result because there can be no conversion of money unless there is an obligation on the part of the defendant to deliver the same money he received from the complainants for the intended purpose. The assertion by the people that the gravamen of the offense was that the defendant appropriated funds to his own purpose overlooks the requirement that there be an obligation to keep intact or deliver the specific funds. No such obligation was shown in this case.

Reversed.

## Opinion of the Court

1. Larceny — Conversion — Statutes — Common Law.

The purpose of the statute prohibiting larceny by conversion is to cover one of the offenses against property not covered by common-law larceny, in which a person with lawful intent obtains possession of another person's property but subsequently converts the property to his own use (MCL 750.362; MSA 28.594).

2. Larceny — Conversion — Possession.

Larceny by conversion, like common-law larceny, is a crime against possession and not against title (MCL 750.362; MSA 28.594).

3. Larceny — Conversion — Possession.

A person cannot convert his own funds; thus, if an owner intends to part with title as well as possession to the defendant, there can be no crime of larceny by conversion (MCL 750.362; MSA 28.594).

4. Larceny — Conversion — Possession.

Title and possession of progress payments made by the purchaser

of a modular house passed to a defendant residential builder under a sales agreement and construction contract for the house and, accordingly, there could be no larceny by conversion arising out of the defendant's use of the money to pay debts other than those incurred in doing the work for which payments were made where there is no testimony that there was not sufficient work done to justify the amount of the progress payments under the contract or that the defendant misrepresented to the agency which financed the building and controlled the progress payments that the payments were to be made to the manufacturer or that he was the agent of the manufacturer, the defendant is not charged with conversion of funds belonging to the manufacturer, and there was no testimony that the purchaser misunderstood the defendant's relation to the manufacturer or that the purchaser intended to retain any title to the payments (MCL 750.362; MSA 28.594).

5. LARCENY — CONVERSION — CONTRACTS.

The element of conversion is not established, in a trial for larceny by conversion, by the facts that the complaining purchaser of a modular house gave money as partial payments to a defendant residential builder for a specific purpose, to pay for the house or for preparation of the site, but that the defendant did not use it for that purpose, in the absence of an agreement that the defendant would apply the specific funds he received from the purchaser as progress payments for particular work to pay the laborers and materialmen responsible for that work or of a requirement that the defendant would establish a separate trust account for each purchaser's particular funds (MCL 750.362; MSA 28.594).

CONCURRING OPINION BY BLAIR MOODY, JR., J.

6. LARCENY — CONVERSION — MONEY.

*There can be no conversion of money unless there is an obligation on the part of the defendant to keep intact or deliver the specific funds he received from the complainants for the intended purpose (MCL 750.362; MSA 28.594).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *James S. Sexsmith,* Senior Assistant Prosecuting Attorney, for the people.

*O'Hagan & Conlin, P.C.,* for defendant.

FITZGERALD, J. Defendant was convicted of three counts of larceny by conversion, MCL 750.362; MSA 28.594, as a result of his use of progress payments made by complainants for modular homes erected by defendant's company.

Defendant owned and operated Washtenaw Active Homes, Inc., which sold and erected modular or prefabricated homes. Washtenaw Active Homes purchased the modular homes from the manufacturer, Active Homes of Marlette, and then sold the homes to purchasers who qualified for financing by the Farmers Home Administration.

Each of the three complainants entered into sales agreements and construction contracts with defendant's company after qualifying for FHA financing. Under the FHA program, a bank account containing the loan money was set up by the FHA and the complainants were given a checkbook. Each check required the signatures of the complainants and of Mr. Kominek of the FHA.

Under the terms of the construction contract, partial payments not to exceed 60% of the value of the work in place were to be made to defendant as he required them. Defendant would submit a statement to the purchaser listing the amount owed for materials and labor. The purchaser, if satisfied that the work was done, would make out a check for up to 60% of the bill and forward it to Kominek. Kominek would then inspect the property to insure that the work listed on the bill was done, at his option, request a waiver of lien, and cosign the check.

During the course of constructing complainants' houses and after certain progress payments had been made, defendant ceased work on the houses because he was experiencing financial difficulties.

He subsequently filed for bankruptcy and was adjudicated bankrupt. Because certain progress payments of complainants had not been specifically forwarded to Active Homes of Marlette, but rather had been used to pay other debts, the defendant was charged with larceny by conversion of these progress payments.[1]

The sole issue on appeal is whether the trial court properly denied defendant's motion for directed verdict in which defendant contended that he was not guilty of larceny by conversion as a matter of law.

Larceny by conversion is "one of the crimes provided by statute law to occupy the no-man's land surrounding the offenses against property at common law". *People v Doe, alias Meyer,* 264 Mich 475; 250 NW 270 (1933).[2] The purpose of the larceny by conversion statute is to cover one of the situations left unaccounted for by common-law larceny, that is, where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use.[3]

---

[1] One progress payment from each complainant was alleged to have been converted, amounting to $5,100, $5,500 and $10,000.

[2] For an interesting history of the development of larceny in the common law see Perkins, Criminal Law (2d ed), pp 231-233; LaFave & Scott, Criminal Law, pp 618-622, 673-678.

[3] A felonious taking or "trespass" is essential to establish the crime of larceny at common law. *People v Taugher,* 102 Mich 598; 61 NW 66 (1894). Consequently, larceny was not the proper charge at common law if a person lawfully acquired possession of property belonging to another and subsequently converted it to his own use. However, courts held that if the defendant had a felonious intent at the time of acquiring possession of property and subsequently converted the property, the initial fraud would supply the element of trespass. *People v Shaw,* 57 Mich 403; 24 NW 121 (1885); Anno: *Distinction between larceny and embezzlement,* 146 ALR 532. Under our present larceny by conversion statute, MCL 750.362; MSA 28.594, the character of the delivery of property, whether induced by legal or wrongful means, is not an element. *People v Doe, alias Meyer,* 264 Mich 475; 250 NW 270 (1933).

As with common-law larceny, larceny by conversion is a crime against possession and not against title; one cannot convert his own funds. *People v Martin*, 116 Mich 446; 74 NW 653 (1898); *People v Long*, 409 Mich 346; 294 NW2d 197 (1980). Thus, if an owner intends to part with title as well as possession, there can be no crime of larceny.[4]

In the instant case, it must first be determined whether title as well as possession of the progress payments passed to defendant. Under the terms of the construction contract, defendant was entitled to progress payments for up to 60% of the value of work in place. The borrower was charged under the contract with the responsibility of making on-site development inspections as the work progressed. Another clause of the contract provided that acceptance of completed work and payment by the owner to the contractor did not relieve the contractor of his obligation to the owner to discharge any and all liens for the benefit of subcontractors, materialmen or any other laborers.

At trial, complainants did not testify that the items listed on defendant's statements, approved by them and approved by Kominek, were not properly payable as work in place. There is no testimony that there was not sufficient work in place, as listed on defendant's statements, to justify the amount of the progress payments.

Although the FHA provided Active Homes of Marlette with a letter of commitment requiring it to remit sums directly to Active Homes of Marlette, the payments were made to defendant. There

---

[4] If the owner is induced to part with both possession and right to ownership by fraudulent representations of one who receives the property with felonious intent, the proper charge is false pretenses. *People v Long*, 409 Mich 346; 294 NW2d 197 (1980); *People v Martin*, 116 Mich 446; 74 NW 653 (1898). See, also, Clark & Marshall, Crimes (7th ed), p 857; Perkins, *supra*, pp 247, 296.

is no testimony that defendant represented that the checks would go directly to Active Homes of Marlette rather than Washtenaw Active Homes. Moreover, defendant is not charged with conversion of funds belonging to Active Homes of Marlette. See *People v Bayer,* 352 Mich 564; 90 NW2d 656 (1958).

Of the three progress payment checks involved here, and the waivers of lien accompanying them, two were made out to Washtenaw Active Homes and only one was made out to "Active Homes". Although Kominek may have been acting under the misconception that Washtenaw Active Homes was an agent of Active Homes of Marlette, it is clear from Kominek's testimony that this misconception was never conveyed to Kominek by defendant. In any event, there is no testimony that the complainants misunderstood the status of defendant's company vis-à-vis Active Homes of Marlette. They knew that payments were being made to Washtenaw Active Homes and there is no evidence that complainants intended to retain any title to the progress payments.

Thus, we conclude that title and possession of the progress payments passed to defendant and, accordingly, there can be no crime of larceny by conversion on these facts.

Even if we were to accept the argument that defendant was not the intended owner of the progress payments and that he was merely a trustee of the funds,[5] we do not find that the element of conversion has been established. The prosecutor contends that conversion is established by the fact that the complainants gave the money to defendant for a specific purpose, *i.e.,* to pay for

_____
[5] The prosecutor neither charged nor argued the applicability of the building contract fund act, MCL 570.171 *et seq.;* MSA 26.331 *et seq.,* in this case.

the home or for site preparation, but defendant did not use it for that purpose.[6]

In *People v Bayer, supra,* in reversing defendant's conviction of larceny by conversion, this Court stated:

"More applicable to our present case is the holding of this Court in a civil action alleging tortious conversion of funds:

" 'It should be noted that defendant was not required to deliver to plaintiff the specific or identical moneys which he collected for merchandise sold or on accounts receivable, but was only required to pay plaintiff the invoiced price for merchandise delivered to him. Therefore, as plaintiff was not entitled to the specific or identical moneys collected by defendant from his customers, he was not entitled to a judgment in tort for conversion. * * *

" ' "There can be * * * no conversion of money, unless there was an obligation on the part of defendant to deliver specific money to plaintiff." 65 CJ, Trover and Conversion, § 24, p 23.' *Garras v Bekiares,* 315 Mich 141, 147, 148 [23 NW2d 239 (1946)]." 352 Mich 595. See, also, *People v Chapman,* 305 Mich 516; 9 NW2d 697 (1943).

It is clear in this case that defendant used partial payments for work in place to pay debts that were not the specific debts incurred in construction of the work in place. He subsequently was unable to pay the latter debts because of his impending bankruptcy. However, there was no agreement that defendant apply the *specific* funds he received from complainants for particular work

---

[6] The prosecutor also contends that this fact demonstrates that complainants did not intend to part with title. We do not agree for the reasons which follow in the text. Assuming, *arguendo,* that such evidence does support the prosecutor's theory of reservation of title by complainants, we still find that the element of conversion has not been established for the reasons which follow in the text.

to pay the laborers and materialmen responsible for that work. There was no requirement that defendant establish a separate trust account for each complainant in which he would deposit that *particular* complainant's funds.

It is beyond dispute that defendant had the contractual obligation to pay the debts of the work in place for which he received progress payments from the complainants. However, there was nothing to preclude defendant from paying for those debts with funds other than the identical moneys he received from complainants. The fact that defendant's bankruptcy intervened to preclude such payment does not render defendant guilty of larceny by conversion.

Although the facts of this case may support civil actions against defendant by complainants and Active Homes of Marlette, they do not support a conviction of larceny by conversion.

Reversed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, and RYAN, JJ., concurred with FITZGERALD, J.

BLAIR MOODY, JR., J. I concur with the result reached by the opinion of the Court for the reason that there can be no conversion of money unless there is an obligation on the part of the defendant to deliver the identical money received for the intended purposes.

The essence of the dispute in the instant case was captured by Justice VOELKER dissenting in *People v Bayer,* 352 Mich 564, 574; 90 NW2d 656 (1958), where he stated:

"That the testimony in this case may have richly

shown that this defendant possessed 'a heart full of larceny', as the saying goes, or that he may possibly have been guilty of some other offense, is no reason to sustain his conviction for this offense unless it is warranted by the record. On the other hand, that he may in the same transaction have possibly been guilty of one or more different criminal offenses as well as the one for which he was convicted is no reason to let him go."

Defendant was convicted of three counts of larceny by conversion, MCL 750.362; MSA 28.594. It is claimed by the people that the heart of this case revolves about the issue of whether the defendant diverted money from the purpose for which it was delivered to him. The gravamen of the offense, as urged by the people, was the fact that Christenson appropriated funds to his own purposes to pay other obligations instead of applying them to certain avowed purposes.

This assertion overlooks the requirement that an action for conversion of money is not maintainable unless there is an obligation on the part of the defendant to return or apply the specific money entrusted to his care. *Garras v Bekiares,* 315 Mich 141; 23 NW2d 239 (1946); *Globe & Rutgers Ins Co of New York v Fisher,* 234 Mich 258; 207 NW 884 (1926); *Alfred Shrimpton & Sons v Culver,* 109 Mich 577; 67 NW 907 (1896).

This basic proposition was applied in the context of a criminal action for larceny by conversion in *People v Bayer.* The majority opinion in *Bayer,* as aptly quoted by this Court today, specifically prescribes that a prosecution for larceny by conversion of money will lie only where there is an obligation to keep intact or deliver the specific money in question and where such money can be identified. No such obligation was shown in this case. Reversed.