*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARTIN HOWARD JUREK,

Defendant-Appellant.

UNPUBLISHED
February 12, 2025
12:49 PM

No. 368257
Otsego Circuit Court
LC No. 21-006069-FH

Before: BORRELLO, P.J., and REDFORD and PATEL, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of operating while intoxicated, third offense (OWI-III), MCL 257.625(1); MCL 257.625(9)(c); four counts of resisting or obstructing a police officer, MCL 750.81d(1); operating while license suspended, MCL 257.904(1); MCL 257.904(3)(a); larceny by conversion (property value of less than $200), MCL 750.362; 750.356(5); and failure to report an accident, MCL 257.622. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to serve concurrent terms of 46 months to 40 years' imprisonment for the OWI-III conviction, 46 months to 15 years' imprisonment for the resisting or obstructing convictions, and 93 days' imprisonment for the larceny by conversion conviction.[1] Defendant appeals by right. We vacate defendant's conviction of larceny by conversion. We also vacate defendant's sentences for his OWI-III conviction and resisting or obstructing convictions and remand for resentencing. We affirm in all other respects.

## I. BACKGROUND

On September 7, 2020, defendant drove a large front-end loader onto Roger Sehl's property and used it to pick up Sehl's shed, along with personal property contained inside. Sehl and defendant had previously agreed that defendant would help Sehl remove his personal property from the shed and pick up the shed the next day. Sehl jumped into the loader's cab and told

---

[1] For the convictions of operating while license suspended and failure to report an accident, the trial court ordered payment of state costs only.

defendant to stop what he was doing. While in the cab, Sehl smelled alcohol wafting from defendant's person and throughout the cab. Defendant rejected Sehl's request, and drove off with the shed onto a highway near Sehl's property. While defendant was driving the loader down the highway, he ran into a stop sign, causing the shed to fall apart. After he unsuccessfully attempted to pick up the remnants of the shed with the loader, defendant drove away.

Defendant eventually parked the loader near his girlfriend's camper and ran into the woods. During a search for defendant, a police dog found him in the woods near the scene of the incident. Defendant was arrested for resisting or obstructing a police officer. After defendant refused to consent to a blood draw for a blood alcohol concentration (BAC) test, he was taken to the Otsego County Jail. While at the jail, Otsego County Sheriff's Deputy Joe Tath obtained a search warrant for the withdrawal of defendant's blood. When Deputy Tath and defendant arrived at a nearby hospital for the blood draw, three other officers arrived as backup. When a phlebotomist attempted to draw defendant's blood, defendant jerked his arm away from her. The officers eventually restrained defendant against his physical resistance, and his blood was drawn.

Defendant was convicted as previously described. This appeal followed.

## II. ANALYSIS

### A. LARCENY BY CONVERSION

Defendant first argues that insufficient evidence was presented to support his conviction of larceny by conversion. We agree.

The question of whether there is sufficient evidence to support a conviction is reviewed de novo. *People v Kenny*, 332 Mich App 394, 402; 956 NW2d 562 (2020). "Due process requires the prosecutor to introduce evidence sufficient for a trier of fact to find the defendant guilty beyond a reasonable doubt." *People v Jarrell*, 344 Mich App 464, 480; 1 NW3d 359 (2022). When there is a challenge to the sufficiency of the evidence, this Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. (quotation marks, citation, and emphasis omitted). This Court is "required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks, citation, and emphasis omitted). Circumstantial evidence and reasonable inferences arising from the evidence are sufficient to prove the elements of a crime. *Id*. "The jury [is] free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and credibility." *People v Ventour*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 363922); slip op. at 7.

Defendant was charged with larceny by conversion involving property valued less than $200. MCL 750.362; MCL 750.356(5). The elements of larceny by conversion are:

> (1) the property at issue must have some value, (2) the property belonged to someone other than the defendant, (3) *someone delivered* the property *to the defendant*, irrespective of whether that delivery was by legal or illegal means, (4)

the defendant embezzled, converted to his own use, or hid the property with the intent to embezzle or fraudulently use it, and (5) at the time the property was embezzled, converted, or hidden, the defendant intended to defraud or cheat the owner permanently of that property. [*People v Mason*, 247 Mich App 64, 72; 634 NW2d 382 (2001) (quotation marks, citation omitted and emphasis added).]

This Court has discussed the intricacies of this offense as follows:

> The purpose of the larceny by conversion statute is to cover one of the situations left unaccounted for by common-law larceny, that is, where a person obtains possession of another's property with lawful intent, but subsequently converts the other's property to his own use. *People v Christenson*, 412 Mich 81, 86; 312 NW2d 618 (1981). See also *Mason*, 247 Mich App at 72; 634 NW2d 382. Larceny by conversion constitutes "a crime against possession and not against title; one cannot convert his own funds." *Christenson*, 412 Mich at 87; 312 NW2d 618. Accordingly, when an owner intends to part with his or her title to property as well as possession, a charge of larceny by conversion is not viable. *Id*. [*People v Spencer*, 320 Mich App 692, 700-701; 909 NW2d 17 (2017).]

The critical deficiency in the prosecution's case is that there was no evidence establishing that someone delivered the shed and its contents to defendant. Sehl testified that he told defendant he could take his shed on a particular day if he helped him remove all his personal items from it first. Sehl also testified that defendant did not have permission to take the shed the day before the agreed-upon day. Sehl testified that when defendant began lifting the shed with the loader, he jumped in the loader's cab and told defendant to put the shed down. This is not a situation in which defendant obtained possession of Sehl's property with lawful intent, but later converted it to his own use. See *id*. Because defendant did not have permission to take the shed at the time that he did, because he took the shed with Sehl's personal items contained inside for which Sehl never intended to pass possession, and because Sehl objected when defendant took the shed, the shed and its contents were not delivered to defendant.[2]

Viewing the evidence in the light most favorable to the prosecution, there was insufficient evidence to allow a reasonable jury to conclude that there was a delivery of the shed and its contents from Sehl to defendant. Consequently, there was insufficient evidence to support defendant's conviction of larceny by conversion.[3]

---

[2] Defendant's conduct is more akin to simple larceny. As previously explained, larceny by conversion entails legally receiving the property and wrongfully using or keeping it for one's own benefit. In contrast, simple larceny requires a trespassory taking that deprives an individual of rightful possession of the property at the inception of the taking. See *People v March*, 499 Mich 389, 408-409; 886 NW2d 396 (2016).

[3] In light of our conclusion, we need not address defendant's other arguments concerning his conviction of larceny by conversion.

## B. RESISTING OR OBSTRUCTING

Defendant additionally argues that the evidence presented is insufficient to support two of his resisting or obstructing convictions because the prosecution did not present evidence that two of the four officers who were present during the blood draw gave defendant any lawful commands. We disagree.

MCL 750.81d(1) provides, in relevant part:

[A]n individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties is guilty of a felony . . . .

The elements of resisting or obstructing a police officer are: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, . . . (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties," and (3) "the officer[] acted lawfully." *People v Murawski*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 365852); slip op at 4 (quotation marks and citations omitted). "Obstruct" under MCL 750.81d "includes the use or threatened use of physical interference or force *or* a knowing failure to comply with a lawful command." MCL 750.81d(7)(a) (emphasis added). While "MCL 750.81d does not abrogate the common-law right to resist unlawful police conduct, such as an unlawful arrest or other unlawful invasions of private rights," a person does not have a right to resist a lawful search. *People v Agar*, 314 Mich App 636, 652; 887 NW2d 662 (2016), rev'd on other grounds 500 Mich 891 (2016).

Regarding the last two elements, it is undisputed that defendant knew that the four individuals were police officers performing their lawful duties. Defendant only contends that, in order to establish this charge, the prosecution was required to prove that defendant resisted or obstructed officers performing their duties and each officer issued lawful commands. Defendant's contention that this element required proof that each of the officers were issuing lawful commands at the time of the obstruction is unsupported by the plain language of MCL 750.81d(7)(a) and the case he cites, *People v Quinn*, 305 Mich App 484, 492; 853 NW2d 383 (2014). MCL 750.81d(7)(a) provides that obstruction occurs where the defendant "use[d] . . . physical interference or force *or* . . . knowing[ly] fail[ed] to comply with a lawful command." (Emphasis added).

In this case, the record was replete with evidence that defendant intentionally resisted or obstructed all four officers in attendance at the blood draw. The officers took defendant to a hospital and informed him they had a valid search warrant to draw his blood samples. Defendant indicated that he would not permit the phlebotomist to draw his blood and would break the needle off in his arm. The four officers held defendant down for the phlebotomist to draw defendant's blood. Defendant jerked his arm away when he was pinned down by the four officers. Defendant's conduct hindered the four officers in their duty to execute the search warrant. There was sufficient evidence for a jury to reasonably conclude that defendant "use[d] . . . physical interference or force" against all of the officers in the performance of their duties. MCL 750.81d(7)(a). See *Oros*, 502 Mich at 239.

-4-

## C. BAC RESULTS

Defendant next argues that the trial court should have excluded the blood alcohol test results because they were not relevant and, even if they were, their probative value was substantially outweighed by the risk of unfair prejudice to defendant because four to six hours passed between the time defendant was arrested and the time his blood was drawn at the hospital. Defendant further argues that, with the exclusion of the test results, there is insufficient evidence to support his conviction of OWI-III.

Defendant stipulated to the admission of his BAC analysis results at trial. By stipulating to the admission of his BAC analysis results at trial, defendant waived any argument regarding admission of those results. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (citation and quotation marks omitted) ("One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error."). Even if we were to review this claim of error, defendant is not entitled to relief for several reasons. The passage of time between the OWI offense and a BAC test goes to the weight of that evidence, not its admissibility. See *People v Wager*, 460 Mich 118, 126; 594 NW2d 487 (1999). The test results were clearly relevant under MRE 401, as they established that defendant's BAC was 0.165 and conclusively proved his intoxication, see MCL 257.625(1)(b), which is a disputed element of OWI, see MCL 257.625(1), and therefore "of consequence in determining the action," MRE 401(b). Further, the probative value of the results was not substantially outweighed by the risk of unfair prejudice to defendant under MRE 403. Finally, even if the BAC analysis results were inadmissible, the testimony presented concerning defendant's intoxication was sufficient to support the verdict.

## D. OFFENSE VARIABLE 13

Defendant argues that he is entitled to resentencing because the trial court erred by assessing 25 points for Offense Variable (OV) 13 for OWI-III and resisting or obstructing convictions. We agree.[4]

This Court reviews a trial court's findings in support of a particular sentencing guidelines decision for clear error. *People v McFarlane*, 325 Mich App 507, 531; 926 NW2d 339 (2018). "Clear error exists when we are left with a definite and firm conviction that a mistake was made." *People v Abbott*, 330 Mich App 648, 654; 950 NW2d 478 (2019). The factual findings of the lower court "must be supported by a preponderance of the evidence." *People v Horton*, 345 Mich App 612, 616; 8 NW3d 622 (2023) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of

---

[4] Although we address the substance of defendant's argument, we note that he failed to challenge the trial court's assessment of OV 13 in his questions presented on appeal. See MCR 7.212(C)(5). Accordingly, defendant has not properly presented this issue for appeal and we need not consider it. See *People v Lowrey*, 342 Mich App 99, 119 n 5; 993 NW2d 62 (2022). However, because defendant presented this argument in the trial court and the trial court decided against him, we exercise our discretion to consider its merits.

the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Abbott*, 330 Mich App at 654 (quotation marks and citation omitted).

OV 13 considers a "continuing pattern of criminal behavior." MCL 777.43(1). The trial court assessed defendant 25 points for his OWI-III and resisting or obstructing convictions. MCL 777.43(1)(c) provides that the trial court assess 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." The trial court must count "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Regarding his OWI-III conviction, defendant argues, and the prosecution concedes, that the trial court should have assessed defendant zero points because OWI is a crime against public safety and not a crime against a person. We agree.

OWI-III is a crime against public safety. MCL 777.12f. It therefore cannot be part of a pattern of crimes against a person. See *People v Bonilla-Machado*, 489 Mich 412, 415-416; 803 NW2d 217 (2011) (holding that a crime statutorily designated as a crime against public safety could not be considered a crime against a person for purposes of scoring OV 13). Defendant is entitled to remand for resentencing because subtraction of 25 points from his offense variable score for his OWI-III conviction results in a change in his sentencing guidelines range. See *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

Regarding his resisting or obstructing convictions, defendant argues that the trial court should have assessed defendant zero points because defendant's convictions arose out a single incident. We agree that there was not a pattern of felonious criminal activity involving at least three crimes against a person.

A single felonious act that results in multiple convictions cannot constitute a pattern of criminal behavior. *People v Carll*, 322 Mich App 690, 704; 915 NW2d 387 (2018). However, separate felonious acts arising out of a single criminal episode can constitute a pattern of criminal activity for purposes of scoring OV 13. *People v Gibbs*, 299 Mich App 473, 487-488; 830 NW2d 821 (2013); See also *People v Harmon*, 248 Mich App 522, 532; 640 NW2d 314 (2001). In *Carll*, 322 Mich App at 705-706, the defendant's four reckless driving convictions arose from a single felonious act of reckless driving in which multiple people were victimized. In contrast, in *Gibbs*, 299 Mich App at 478, a defendant convicted of one count of unarmed robbery and two counts of armed robbery committed three different robberies in a single criminal episode: one robbery where a defendant took the jewelry of one victim, a robbery where a defendant used a gun to make the second victim withdraw money from a cash register and safe, and another robbery where a defendant took the wallet of a third victim.

In this case, defendant was convicted of four felonies: the OWI-III and the three counts of resisting or obstructing a police officer. As previously explained, OWI-III is not classified as a crime against a person and cannot be counted for purposes of scoring OV 13. Outside of the convictions arising from this case, defendant has committed no other offenses within the five-year period that can be counted for purposes of scoring OV 13. After careful review of the lower court record, we cannot conclude that there was sufficient evidence for the trial court to conclude that the four resisting or obstructing convictions involved at least three separate acts.

Defendant's threat of breaking the needle off in his arm when a deputy showed him the search warrant constituted a separate act of obstruction. The remainder of defendant's other acts of resisting or obstructing are part of a single felonious act. Following defendant's threat, the officers restrained him against the bed on his back. When the phlebotomist advised that she would start drawing blood, defendant began jerking his arms and pulling away.[5] The officers flipped defendant over on his stomach in response to a request by the phlebotomist. While he was held face down by the four officers, defendant continued to jerk his arm away until the blood draw was completed. Defendant's conduct of jerking his arm against the officers' restraint was a continuing act of physical interference that victimized the officers simultaneously, rather than "separate acts against each individual victim in the course of" that resistance. *Carll*, 322 Mich App at 706. That is, defendant's four convictions of resisting or obstructing represent the four different officers he resisted or obstructed via the same conduct, rather than four separate acts of resisting or obstructing.

Accordingly, that leaves the prosecution with just two crimes against a person, one fewer than the required three or more to score OV 13 at 25 points. See MCL 777.43(1)(c). Therefore, the trial court erroneously scored OV 13 at 25 points for defendant's resisting or obstructing convictions. Defendant is entitled to remand for resentencing because subtraction of 25 points from his offense variable score for his resisting or obstructing convictions results in a change in his sentencing guidelines range. See *Francisco*, 474 Mich at 91-92.[6]

## III. CONCLUSION

We vacate defendant's conviction of larceny by conversion and remand for entry of a finding of not guilty on that count.

---

[5] To the extent that the prosecution argues on appeal that defendant's act of resisting the phlebotomist should be counted, such acts do not constitute resisting or obstructing under MCL 750.81d, as the prosecution did not provide any evidence that the phlebotomist was a "person" as it is defined under MCL 750.81d(7)(b). In particular, it has provided this Court with no evidence that a phlebotomist qualifies as "emergency medical service personnel," which would seem to be the only category of "person" the phlebotomist could be. See MCL 750.81d(7)(b)(ix).

[6] Because we conclude that remand for resentencing is necessary for both defendant's OWI-III and resisting or obstructing convictions, defendant's remaining argument that his sentences for those convictions are disproportionate is now moot and we decline to address it. *People v Thue*, 336 Mich App 35, 39; 969 NW2d 346 (2021) (quotation marks and citation omitted) ("An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy.").

We vacate defendant's sentences for his OWI-III conviction and resisting or obstructing convictions because he should not have been assessed 25 points for OV 13. We remand for recalculation of the applicable sentencing guidelines and resentencing on those convictions.

We affirm in all other respects. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ James Robert Redford
/s/ Sima G. Patel