JOHN W. HEAVILIN, Appellee, v. PAUL H. WENDELL, Appellant.

No. 41232.

MARCH 15, 1932.

REHEARING DENIED JUNE 24, 1932.

Cosson & Newcomb, for appellant.

Paul W. Walters and Howard L. Bump, for appellee.

ALBERT, J.—On the 5th day of May, 1930, defendant, Paul Wendell, was the owner of an Essex coach. He and one Julius

Ersland lived in different apartments in the same apartment building in the city of Des Moines, and on the morning of the above day, Ersland borrowed defendant's automobile under the understanding and agreement that it was to be used for the purpose of going to a near-by drug store to procure medicine for Mrs. Ersland, who was ill. Instead of using the car as specified, however, Ersland proceeded to take a "joy ride" around the city of Des Moines and vicinity. About noon he picked up a young lady, and shortly thereafter, at East First Street and Grand Avenue, he had a collision with a Nash sedan owned and operated by Robert Stiles of St. Louis, Missouri. John W. Heavilin, the plaintiff, was riding in the latter car when the collision occurred, causing injuries of which he complains.

But one error is relied upon for reversal. The evidence in the case shows, without dispute and without impeaching or weakening surrounding circumstances, that Ersland borrowed this car from the defendant on the representation that his wife was ill and he wished to go to a drug store to procure medicine for her and would return the car promptly, and these were the conditions under which the car was loaned by Wendell to Ersland.

At the close of all of the testimony, the defendant made a motion to direct a verdict on the ground, in substance, that when the accident occurred, Ersland was not driving the car with the consent of the owner; hence Section 5026, Code, 1927, had no application to the facts in the case. This being true, plaintiff had not made out a case for the jury.

This contention was recognized by the court, and the same was submitted to the jury by instruction. The defendant insists that no such question should have been passed to the jury, but that the court should have held, as a matter of law, that the plaintiff had failed to make a case. This is the question before us for decision.

Section 5026 reads as follows:

"In all cases where damage is done by any car driven by any person under fifteen years of age and in all cases where damage is done by the car, driven by consent of the owner, by

reason of negligence of the driver, the owner of the car shall be liable for such damage.''

The question of operation of an automobile by another on the theory of agency, of master and servant, or employer and employee, has been passed upon by us in cases to be later reviewed. There has also developed in our cases what is known as the ''family car'' doctrine, as shown by the following cases: Dircks v. Tonne, 183 Iowa 403; Collinson v. Cutter, 186 Iowa 276; Landry v. Oversen, 187 Iowa 284; Baldwin v. Parsons, 193 Iowa 75:

Another doctrine has also been announced by this court in what are known as cases of ''joint or common enterprise,'' as illustrated by Daggy v. Miller, 180 Iowa 1146.

Until the adoption of what is now Section 5026 of the Code, to wit, Chapter 275, Acts of the 38 G. A., passed by the legislature in 1919, there was no specific provision in the Code governing such a set of circumstances. A part of Section 12 of the aforesaid Act reads as follows:

''And in all cases where damage is done by the car, driven by consent of the owner, by reason of negligence of the driver, the owner of the car shall be liable for such damage.'' (Now Section 5026 of the Code.)

Until the passage of this Act, this court consistently held that where a car was being driven by a person other than the owner, without the consent of the owner, the owner was not liable for damages growing out of the negligence of such driver, and this was our holding in cases to be discussed later herein.

The question at this point is whether or not the enactment of this section by the legislature changed the rule theretofore announced by our opinions.

The first time this new statute came before this court, so far as we are able to find, is in the case of Rowland v. Spalti, 196 Iowa 208. In that case we said:

''It is true that, in the instant case, the defendant did consent that Leo should drive the car to Knoxville; and, had the collision occurred while he was making that trip, so authorized, it may be assumed that the father would have been liable for the son's negligence; but it surely may not be said that the con-

sent given for the Knoxville trip operated to expose the parent to liability for the wrongful act of the son in departing from or exceeding the authority so given him.''

In the case of Curry v. Bickley, 196 Iowa 827, we said:

''But, in any event, the inference that a car is being operated at a given time by the owner, or with his consent, does not require that every case shall go to the jury where the undisputed and uncontroverted evidence establishes the facts so conclusively that the inference is overcome.''

In Maine v. Maine & Sons Co., 198 Iowa 1278, 1. c. 1282, we said:

''* * * so it has been held, under the statute, that, where the owner has consented to a particular use of his car, the negligence of the driver, while using the car for some purpose of his own, and beyond or outside the terms of the consent given, will not render the owner liable.''

In Seleine v. Wisner, 200 Iowa 1389, we said:

''We have also held that an allegation of ownership carries with it an inference of law; to wit, that the car was operated by the owner, or, if by someone else, that it was with the owner's consent. This is a mere inference, and is recognized as a weak one, but sufficient to compel the owner to identify those operating the vehicle and explain by what authority, if not his own, the car was operated.''

In the case of Tigue Sales Co. v. Reliance Motor Co., 207 Iowa 567, 573, there was a total absence of evidence on the part of the defendant as to how the party came to be driving the owner's car. We there said:

''The question of ownership and consent, under the facts in the instant case, was clearly for the jury to determine. Had there been any evidence that the consent or permission given Swearingen (the driver of the car) was in any way limited, the cases relied upon by appellant might find application.''

In Landry v. Oversen, 187 Iowa 284, at 286, we said:

''The proof of ownership of the automobile at the time of

the collision merely makes out, *prima facie*, that the automobile was being operated for the owner, and to avoid a finding to this effect, there must be some showing to the contrary. The strength of the *prima facie* showing necessarily depends on the circumstances of each particular case.''

We also laid down the rule in this case that the burden of proof is on the party asserting the fact that the car was driven with the owner's consent, and does not change.

It is apparent from these holdings that we have consistently held that where the owner loans a car to another, for a specific purpose, and the party uses it for some other or different purpose, the owner is not liable for the negligence of the driver of the car while he is using it for such other or different purpose. Plaintiff having alleged that the car was driven with the consent of the owner, as said in the *Landry* case, supra, he has the burden of proving or establishing this fact, and there is no burden on the defendant. Proof of ownership raises an inference of consent, as said in Seleine v. Wisner, 200 Iowa 1389. He may negative this inference by proof that there was no such consent, and in the case at bar, both the driver and the owner of the car testified that the consent to drive the car was limited to that of going from the residence to the drugstore to get medicine for the wife of Ersland, and this testimony is uncontradicted by any facts or circumstances proven in the case which would tend to cast doubt or uncertainty on the testimony of the owner and the driver of the car. At this point, therefore, it must be held, as a matter of law, that the evidence in this case conclusively overcomes said inference, and the plaintiff failed to carry the burden of proving that the car was being driven with the consent of the owner. Such is the effect of our holdings in Reynolds v. Buck, 127 Iowa 601; Sultzbach v. Smith, 174 Iowa 704; Hall v. Young, 189 Iowa 236, 237; and Baldwin v. Parsons, 193 Iowa 75. The first three of these cases were decided on accidents which occurred before this statute was adopted; the *Baldwin* case and the other cases cited in the prior part of this opinion after and under the statute.

The appellee relies on the case of Wolfson v. Jewett Lumber Co., 210 Iowa 244, and Lange v. Bedell, 203 Iowa 1194. In each of these cases there was proof of facts and surrounding

circumstances which would tend to negative the testimony of the owner and the driver of the car, and we rightfully held, under such circumstances, that the question was for the jury.

We think, after having thus reviewed the law and the facts in this case, the court should have held, as a matter of law, that the plaintiff had failed to make a case, and should have sustained the defendant's motion for a directed verdict. But to meet this situation, the appellee insists that because the defendant, after his motion to direct a verdict had been over-ruled, in asking the court to instruct on the question of con-sent thereby waived the error in overruling the motion for a directed verdict, and further insists that because the court did instruct on such proposition and the appellant did not take exceptions to the instruction, he cannot now be held to raise this question.

The appellant fairly presented his contention to the court in his motion to direct a verdict, and the court overruled it. The court thereby had the opportunity to pass upon this ques-tion as it was squarely presented to him, and he did so. By that ruling he fixed the law of the case, and the appellant's at-torney,—as was his duty in the protection of the rights of his client,—must therefore bow to that ruling; but his so doing does not prevent him from asking an instruction on the same proposition to save what rights of his client's he can, and to have the jury properly instructed under the law thus fixed by the court's ruling. By asking such instruction, he did not waive the error of the court in the ruling previously made on the mo-tion to direct a verdict.

It must be confessed that there is some confusion in our cases on this proposition. It is the general proposition, con-sistently held by this court, that where a litigant asks an in-struction on a given proposition, he can not afterwards be heard to say that such proposition is not in the case. This line of authorities is as follows: Smith v. Sioux City & Pac. Ry. Co., 38 Iowa 173; Campbell v. Ormsby, 65 Iowa 518; Light v. C. M. & St. P. Ry. Co., 93 Iowa 83; Bonnot Co. v. Newman Bros., 109 Iowa 580; Renner Bros. v. Thornburg, 111 Iowa 515; Dalton v. C. R. I. & P. Ry. Co., 114 Iowa 257; Padelford v. City of Eagle Grove, 117 Iowa 616; Gordon v. C. R. I. & P. Ry. Co., 154 Iowa 449; Carnego v. Crescent Coal Co., 163 Iowa 194;

Cheney v. Stevens, 173 Iowa 288. However, in each and all of the above cases, there was no motion made to direct a verdict.

In Martens v. Martens, 181 Iowa 350, there was a motion for a directed verdict on the ground that there was no testimony on which the verdict could be sustained. In that case it is said:

"Moreover, if there were any error in this respect, it would have to be treated as waived. It is a well settled rule that a party asking instructions which, if given, would submit to the jury an issue of fact, cannot thereafter be heard to say that there was no evidence for the jury's consideration."

The opinion cites as supporting this pronouncement Cheney v. Stevens, 173 Iowa 288; Gordon v. C. R. I. & P. Ry. Co., 154 Iowa 449; Carnego v. Crescent Coal Co., 163 Iowa 194. A reference to these cases, however, shows that no motion to direct a verdict was filed in any of them, and they are therefore not a basis for the general statement made in the opinion.

In McDermott v. Ida County, 186 Iowa 736, there was a motion for a directed verdict, and based on the *Cheney* case, supra, it is said that "a request for instruction on particular issues is virtually an admission that there was sufficient evidence to warrant the submission of such issues, precluding contentions otherwise."

In Hanley v. Fidelity & Casualty Co., 180 Iowa 805, doubt is cast upon the doctrine announced in the two cases cited, and we there said:

"That the case before us falls clearly within the scope and reason of the rule of the authorities is clear, and we are not now called upon to define its limitations or the exceptions thereto, if any. It may well be that, where a party's timely objection to the sufficiency of the evidence has been overruled, and he has made unavailing efforts to have the matter treated as one at law, and the question is being sent to the jury over his protest, a request by him for instructions in harmony with his theory of the case will not estop him to review his objection to the sufficiency of the evidence, both in a motion for new trial and upon appeal. Such is not the state of this record, and decision upon the question thus suggested must await the presentation of a case appropriate for its consideration."

Of course, so far as the above case is concerned, it is dictum, but at the same time it cannot be harmonized with the two cases to which reference is made.

In Johnson v. City of Denison, 186 Iowa 949, a motion to direct a verdict was made, which was overruled, and subsequently the party against whom the ruling was made requested instructions. We there said:

"We do not think the defendants are precluded, by what subsequently transpired, from predicating error upon the refusal of the court to sustain their motion for a directed verdict, and we do not find any case that directly so holds. The last expression of the court touching this proposition is found in Hanley v. Fidelity & Cas. Co., 180 Iowa 805, 819. By submitting the motion and having an adverse ruling, defendants did not waive their right to have the case submitted to the jury, under proper instructions. They did not waive any error committed by the court in its ruling upon the motion for a directed verdict. They had no other recourse. They were forced by the action of the court in overruling the motion to make at least some effort to protect themselves against further evil consequences at the hands of the jury. They had no choice, after the ruling of the court. The case must then go to the jury, and they were entitled to have it go under proper instructions, without waiving the error, if any, committed by the court in overruling the motion. If the motion was good, and the court should have sustained it, then the court committed error in overruling it, error prejudicial to the defendants. Of this error, the defendants are now in a position to complain, and no action of the court and no action of the jury could cure the error. If, under the evidence, the ruling was wrong, it is still wrong. If defendants were entitled to life preservers, their right was not lost by afterwards grappling at straws. We think there is no rule established by this court that precludes a review of the action of the lower court in overruling a motion for a directed verdict, simply because the defendant asked that the court, in submitting the case, submit it upon proper instructions, or because he prepared and asked instructions to be given to the jury, presenting fairly to them law as it is: this, even though the instructions were prepared by defendant that were given by the court."

The same is the holding in Willis v. Schertz, 188 Iowa 712.

In Harper & Ward v. Kurtz, 188 Iowa 1047, l. c. 1055, we said:

"We think it was the clear right and duty of counsel for defendant, as this point, to adapt themselves to the view of the law already adopted by the court over their exception, and to soften, as much as they could, the emphasis of the court's instructions 5 and 7. Surely, we must recognize the right of an attorney to plead with the court for a modification of erroneous views, where a complete correction of them appears impossible of attainment."

In Hall v. C. R. I. & P. Ry. Co., 199 Iowa 607, where the fact situation is identical with the one before us, we said:

"It is thought by appellee that, by offering instructions, appellant admitted that there were facts to go to the jury, and waived the right to object to the submission of the question. * * * Appellant offered an instruction to this effect: That the evidence is wholly insufficient to justify recovery on the part of plaintiff, and that the jury should return a verdict for the defendant. It also offered two others, to the general effect that, if the circumstances relied upon by plaintiff are as consistent with the theory that the accident may have occurred without any·negligent handling of the cars, the verdict should be for the defendant. The defendant insisted, at all stages of the trial, by motion to direct a verdict and otherwise, as they are contending here, that the evidence was insufficient. Under the circumstances of the case, we think there was no waiver," citing Harper & Ward v. Kurtz, and Johnson v. City of Denison, supra.

In Ballinger v. Democrat Co., 207 Iowa 576, which was a libel suit, the defendant requested the court to withdraw from the jury an instruction on exemplary damages, which the court refused to do. Defendant then requested an instruction on exemplary damages, and we there said:

"The appellee contends that the appellant cannot now urge the error in submitting the question of exemplary damages to the jury, because, in a requested instruction, the appellant defined nominal damage, actual damage, and exemplary damage. The request, however, was made, not as a request that the court

submit the question of exemplary damages to the jury, but after the court had expressly refused to withdraw the question of exemplary damages, and had refused the appellant's request for an instruction withdrawing exemplary damages, and had excluded the appellant's evidence bearing on the question of express or actual malice. It was not waiver of the error in these rulings. The court had clearly defined its position in the matter, and thereupon the appellant requested the court to give the jury a correct definition of exemplary damages, the court having already ruled, over appellant's objection, that that question would be submitted to the jury. This was not a waiver of the rulings previously made."

It is therefore apparent that the later opinions of this court on this question are contrary to the holdings in the cases in 181 and 186 Iowa, and to the end that there may be no misunderstanding about this matter, we now fix the ruling to be that where a party makes a motion for a directed verdict and the court overrules the same, the person against whom such ruling is made does not waive the error, if there is one, in the court's ruling on a motion to direct a verdict by asking instructions which correctly state the law of the case as fixed by the court's ruling on the motion to direct a verdict. What is said in Martens v. Martens, 181 Iowa 350, and in McDermott v. Ida County, 186 Iowa 736, and possibly some dictum in previous or subsequent cases, is hereby overruled.

Of course, nothing said herein has anything to do with the rule set out in the first part of this opinion where no motion for a directed verdict is made.

Having reached this conclusion, the contention of the appellee on this point is not sustained. For the reasons set out in the first part of this opinion the case is—Reversed.

WAGNER, C. J., and STEVENS, FAVILLE, and DE GRAFF, JJ., concur.