STATE of Iowa, Appellee,

v.

Wallace GALBREATH, Appellant.

No. 92–1881.

Supreme Court of Iowa.

Dec. 21, 1994.

Linda Hansen Robbins of Irvine & Robbins, Cedar Rapids, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., Denver D. Dillard, County Atty., and Harold Denton, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, ANDREASEN, and TERNUS, JJ.

NEUMAN, Justice.

This case stems from a roofing contract gone awry. Although the contractor—defendant Wallace Galbreath—initially pleaded guilty to theft by misappropriation, he later decided the plea was ill-advised. He moved in arrest of judgment but the district court denied the motion. Upon defendant's appeal, the case was transferred to the court of appeals. That court reversed, reasoning that the facts outlined at the plea colloquy supported no more than a breach of contract. We granted the State's application for further review. Having now considered the arguments presented, we concur in the court of appeals' decision and reverse the district court.

Defendant Galbreath entered into a written contract with Deng and Heather Xayasouk to replace the roof on their home at a cost of $2870. Pursuant to the contract, the Xayasouks paid Galbreath a down payment of $1435. The contract was signed on a Friday; work was to commence the following Monday.

Over the weekend the Xayasouks entertained misgivings about Galbreath. One of his former employees led them to believe that he had gone out of business. Monday brought inclement weather and Galbreath did not start on the job. He did, however, park a large truck containing roofing materials outside their home. That evening, when contacted by the Xayasouks, Galbreath assured them he would start as soon as the weather permitted. When another day went by without any progress, the Xayasouks called Galbreath to terminate the contract and demand a return of their down payment. Galbreath thereafter removed the truck, performed no roofing work, and returned no money.

The State charged Galbreath with second-degree theft by misappropriation, as an habitual offender, in violation of Iowa Code sections 714.1(2) and 902.8 (1991). Following discovery, Galbreath pleaded guilty to the theft charge in exchange for dismissal of the claim that he should be sentenced as an habitual offender. In an attempt to establish a factual basis for the plea, the court engaged Galbreath in the following colloquy:

Q. In order to prove you guilty, the State would have to prove on July 26, 1991, you misappropriated money entrusted to you by the Xayasouks. In July of 1991, on or around the 26th, were you in Linn County? A. Yes.

Q. Did you contact the Xayasouks or be in touch with them and give them a bid to repair their roof? A. Yes, I did.

Q. Did they make a down payment to you for materials? A. Yes.

Q. Was that by way of a check for $1,435? A. Yes, it was.

Q. Did you ever buy the materials or repair their roof? A. Yes, I did buy the materials but I did not repair the roof.

Q. Do you think you are guilty of this charge? A. Yes, I am.

Q. Any question about that? A. No.

The court then set the matter for sentencing. Prior to sentencing, Galbreath obtained new counsel who moved in arrest of judgment. The motion asserted that Iowa Code section 714.1(2) is inapplicable to the facts of

this case as a matter of law. Counsel moved in the alternative that Galbreath should be permitted to withdraw his plea because it was entered without knowledge—or advice by the court—that the facts presented a contractual dispute, not a theft. The district court set the matter for hearing. After listening to testimony from Deng and Heather Xayasouk, as well as Galbreath, the court denied both motions and entered judgment against Galbreath upon his plea of guilty. This appeal followed.

I. The State charged Galbreath with a Code section that provides, in pertinent part, that a person commits theft when the person

[m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control . . . by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property. . . .

Iowa Code § 714.1(2). The State makes no claim—nor would the record support an argument—that Galbreath held the Xayasouks' down payment in trust. The question, then, is whether payments advanced under a contract are "property of another" so as to come within the ambit of section 714.1(2). This is a question of first impression in this state.

 Most courts that have confronted the issue have held that a down payment made pursuant to the terms of a construction contract is not held by the contractor as "property of another." Once the money changes hands, both title and possession vest in the contractor. *Crawford v. State*, 453 So.2d 1139, 1142 (Fla.App. 2d Dist.1984) (down payment to contractor does not retain its character as property belonging to owner); *People v. Christenson*, 412 Mich. 81, 87, 312 N.W.2d 618, 621 (1981); *Shelley v. State*, 447 So.2d 124, 126 (Miss.1984) (even in case of "fast talk" by a "known crook," once owner gave money to contractor, "it belonged to him"); *Commonwealth v. Austin*, 258 Pa.Super. 461, 467–68, 393 A.2d 36, 39 (1978); *Commonwealth v. Bartello*, 225 Pa.Super. 277, 278–81, 301 A.2d 885, 886–87 (1973). It is axiomatic that one cannot be found guilty of converting one's own funds. *Christenson*, 412 Mich. at 85, 312 N.W.2d at 620; Charles

E. Torcia, *Wharton's Criminal Law* § 538 (1957). Thus failure by a contractor to adequately perform may give rise to a suit for breach of contract but will not support a conviction for criminal conversion. *Austin*, 258 Pa.Super. at 471, 393 A.2d at 41; *Crawford*, 453 So.2d at 1142–43; *Christenson*, 412 Mich. at 87, 312 N.W.2d at 620; *Shelley*, 447 So.2d at 126. The court noted in *Christenson*, however, that if the owner's transfer of funds was prompted by a contractor's fraudulent representations, a case could be made for theft by false pretenses. *Christenson*, 412 Mich. at 87 n. 4, 312 N.W.2d at 620 n. 4; *see* Iowa Code § 714.1(3) (theft defined as obtaining transfer of ownership of another's property by deception).

We are aware of only two courts that have rejected this line of reasoning. In *Commonwealth v. Robichow*, 338 Pa.Super. 348, 353, 487 A.2d 1000, 1003 (1985), the court carved out a policy-based exception to *Austin* and *Bartello* to uphold an embezzlement conviction where the State proved that—from the inception of the contract—the contractor had no intent to perform. Such evidence, the court reasoned, established that the funds were fraudulently obtained thereby preventing title from passing to the defendant. *Id.* Similarly, in *State v. Joy*, 121 Wash.2d 333, 341, 851 P.2d 654, 659 (1993), the court held that if the contract between the owner and the defendant restricted the use of the down payment to a specific purpose (purchase of materials, for example) the owner would retain an interest in the money. The retention of that interest by the owner would be sufficient to bring a contractor who applied the funds to some other use within the ambit of a statute prohibiting theft by embezzlement. *Id.*

Of these two lines of authority, we believe the majority rule is better reasoned and more closely fits the statutory scheme found in section 714.1. The outcomes in *Robichow* and *Joy*, while perhaps satisfying, can only be reached through the legal fiction of converting an unconditional transfer to a transfer in trust. In Iowa the statutory theft classifications clearly distinguish between theft based on misappropriation of funds in which the owner retains an interest and theft by deception that results in the transfer of

possession and ownership. *Compare* Iowa Code § 714.1(2) *with* Iowa Code § 714.1(3). In other words, so long as the State pursues the proper charge, no judicial transformation of facts is necessary to uphold a conviction.

In keeping with the majority rule, we hold that the term "property of another" as it is used in Iowa Code section 714.1(2) means property in which the owner retains an interest, whether by trust or some other legal relationship. Thus, in the context of an ordinary construction contract, cash advanced as a down payment will not qualify as "property of another" because title and possession are transferred from the owner to the contractor—not in trust—but outright.

■ II. When taking a guilty plea from a defendant, a court is not required to explain the charge in any particular way. *State v. Worley*, 297 N.W.2d 368, 371 (Iowa 1980). The complexity of the charge and the circumstances of each case will dictate the extent of dialogue necessary to convey the essential elements of the offense. *Id.* Overall the court's inquiry of the defendant must be sufficient to demonstrate the defendant's understanding of the law in relation to the facts. *State v. Brown*, 262 N.W.2d 557, 562 (Iowa 1978).

■ In the plea colloquy excerpted above, the district court called upon Galbreath to determine for himself whether his conduct fell within section 714.1(2). The subtle but crucial nuances in the theft statute were left unexplained. As a result, Galbreath was permitted to plead guilty to a charge for which there existed no factual basis. The judgment based on his plea of guilty must be vacated. *State v. Burtlow*, 299 N.W.2d 665, 668 (Iowa 1980); *State v. Sanders*, 309 N.W.2d 144, 147 (Iowa App.1981); Iowa R.Crim.P. 8(2)(b).

■ A question remains concerning the proper procedure on remand. Ordinarily, when a factual basis is merely lacking, remand to permit the defendant to plea anew would be in order. *See Brown*, 262 N.W.2d at 563. Here, however, it appears that no additional facts will save this plea; defendant, if he is indeed guilty of theft, has been charged with the wrong offense. *See State v. Schoelerman*, 315 N.W.2d 67, 75 (Iowa 1982);

*Burtlow*, 299 N.W.2d at 670. Therefore we remand for dismissal of the charge without prejudice to the State's right to re-indict Galbreath under a Code section supportable by the available evidence. *See Shelley*, 447 So.2d at 126.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED.**