284 B.R. 893 (2002)
Ramon K. ZIADEH, Lynda Ziadeh, Debtors.
Zio Johnos Inc., Plaintiff,
v.
Ramon K. Ziadeh, Defendant.
Bankruptcy No. 01-01059-C. Adversary No. 01-9185-C.
United States Bankruptcy Court, N.D. Iowa.
September 18, 2002.
*894 *895 *896 Renee K. Hanrahan, Cedar Rapids, IA, for Plaintiff.
Michael L. Mollman, Cedar Rapids, IA, for Debtors/Defendants.

ORDER RE: COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT
PAUL J. KILBURG, Chief Judge.
The above-captioned matter came on for trial on July 30, 2002 on Plaintiffs' Complaint Objecting to Discharge. Plaintiff Zio Johnos, Inc. was represented by attorney Renee Hanrahan. Debtor/Defendant Ramon K. Ziadeh, d/b/a R.L.Z. Construction, was represented by attorney Michael Mollman. After presentation of evidence and arguments of counsel, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

STATEMENT OF THE CASE
Plaintiff Zio Johnos Inc. filed its complaint to determine dischargeability on August 13, 2001. Plaintiff seeks to except a debt from discharge under § 523(a)(2)(A) for fraud or false representations, § 523(a)(4) for fraud in a fiduciary capacity, or § 523(a)(6) for willful and malicious injury by the debtor to another entity.
Plaintiff's claim arises out of a default judgment entered in favor of Plaintiff and against Defendant/Debtor in the Iowa District Court for Johnson County in the amount of $18,760.85 in actual damages. The petition, amended petition, and motion for summary judgment were premised on Debtor's breach of contract, fraudulent misrepresentations, and conversion. The Iowa District Court granted Plaintiff summary judgment on November 1, 2000. Judgment was entered December 1, 2000.

FINDINGS OF FACT
In early 2000, Zio Johnos planned to open a restaurant in Iowa City, Iowa. Elie Khairallah, Vice President of Zio Johnos, Inc., needed a general contractor to remodel the property. Mr. Khairallah entered into a series of negotiations with Debtor in which Debtor represented that he was a knowledgeable and experienced general contractor. Debtor further represented that he was licensed, insured, and bonded. These negotiations resulted in a written contract for remodeling work. The contract provided that Debtor act as General Contractor for the project. This position made Debtor responsible for all aspects of the job, including the hiring and payment of subcontractors. The parties dispute whether the contract obligated Debtor to pay the plumbing costs owed to A'Hearn Plumbing & Heating.
Debtor informed Mr. Khairallah that he needed $26,000 up front to cover the cost of the materials for the job. Debtor told Mr. Khairallah that the money paid by Mr. Khairallah would be administered through a separate checking account and would only be used for the Zio Johnos project. Debtor did open a business checking account at Bank Iowa with the initial funds from the Zio Johnos project.
In addition to the initial payment of $26,000, the agreement between the parties stipulated that Zio Johnos would pay Debtor an additional $3,000 per week when the job began. These periodic payments were to cover labor and materials supplied *897 by both Debtor and the subcontractors. Throughout the duration of the Zio Johnos project, Debtor apparently had no other construction projects nor any other source of income.
Mr. Khairallah testified that in March of 2000, Debtor told him that he needed $30,000 to pay A'Hearn and other workers. Mr. Khairallah gave Debtor the $30,000 which was deposited into the Zio Johnos project checking account. Several days later, Debtor informed Mr. Khairallah that everyone had been paid. Debtor made similar assurances to Mr. Khairallah prior to the April 28, May 16, and May 31, 2000 progress payments.
The record establishes that Debtor misappropriated funds earmarked for the Zio Johnos project. The bank statement and copies of checks written after the $30,000 deposit show that Debtor used funds to make non-business expenditures. These expenditures included:

Investment in stock market $ 5,100.00
Bedroom furniture 1,073.98
Bedding 460.69
House and Auto Insurance 745.00
Central City Athletic Club 10.00
Lawn care 85.05
Utilities 593.54
House Payment 1,000.00
Veterinary Services 139.41
Meals/Groceries/Handimart 296.07
Miscellaneous 254.56
Kirklands 109.94
Haircuts 55.00
Toy Store 144.76
Paintball Gun 258.20
Wal-Mart 894.61
Credit Card Companies 860.18
 ----------
 $12,080.99

The evidence suggests, however, that Debtor did pay some of the subcontractors. From the $30,000 payment, Debtor made payments to Elie Shaheen, McCallum's Electrical Services, Cedar Rapids Tile & Marble, and Menards. Debtor did not, however, make payments to A'Hearn Plumbing, A.P.C. Emmert, Kelly Heating and Air Conditioning, or Yates & Yates. All of these unpaid subcontractors, except for Kelly Heating and Air Conditioning, subsequently filed mechanic's liens on the building being remodeled. These liens caused Plaintiff to be in violation of its lease agreement. In order to remove these liens Plaintiff was forced to pay these subcontractors a total of $18,760.85.
Plaintiff seeks to have the entire amount of the judgment issued by the Iowa District Court excepted from discharge. Debtor's brief asserts that only the funds used for personal expenditures should be excepted from discharge since Debtor used a portion of the funds towards the project.

§ 523(a)(2)(A)
Plaintiff asks for a finding that this debt is nondischargeable pursuant to § 523(a)(2)(A). This section provides in pertinent part:
(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt
. . .
(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by 
(A) false pretenses, a false representation, or actual fraud, other than a *898 statement respecting the debtor's or an insider's financial condition.
11 U.S.C. § 523(a)(2)(A) (2002).
Plaintiff must prove the elements of its claim under § 523(a) by a preponderance of evidence. Grogan v. Garner, 498 U.S. 279, 285, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge must be "narrowly construed against the creditor and liberally against the debtor, thus effectuating the fresh start policy of the Code. These considerations, however, `are applicable only to honest debtors.'" In re Van Horne, 823 F.2d 1285, 1287 (8th Cir.1987).
In the Eighth Circuit, a creditor proceeding under § 523(a)(2)(A) must prove the following elements: (1) the debtor made representations; (2) at the time made, the debtor knew them to be false; (3) the representations were made with the intention and purpose of deceiving the creditor; (4) the creditor justifiably relied on the representations; and, (5) the creditor sustained the alleged injury as a proximate result of the representations having been made. In re Ophaug, 827 F.2d 340, 342 n. 1 (8th Cir.1987), as modified by Field v. Mans, 516 U.S. 59, 74-75, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) (holding that "§ 523(a)(2)(A) requires justifiable, but not reasonable, reliance").
Plaintiff has satisfied the first three elements of § 523(a)(2)(A). The Court finds that Debtor knowingly made false representations, intending that Plaintiff rely on them. Debtor told Mr. Khairallah that the $30,000 progress payment would be used to pay subcontractors. Although Debtor paid several subcontractors, the evidence demonstrates that Debtor used a substantial portion of these funds on personal expenditures. Moreover, Debtor repeatedly reassured Mr. Khairallah that everyone involved with the project had been paid. These acts demonstrate Debtor's intent to deceive Plaintiff and induce it to rely on the misrepresentations.
The fourth element is satisfied. Plaintiff justifiably relied on Debtor when making these progress payments. Debtor held himself out as being a knowledgeable and experienced general contractor who had previously performed this type of work. Plaintiff had no way of knowing that Debtor would not follow through with his contractual obligation to pay the subcontractors.
The final element under § 523(a)(2)(A) is also proven. Debtor's fraud is the proximate cause of Plaintiff's damages. Had Debtor not fraudulently represented to Mr. Khairallah that he would perform as a general contractor and would pay subcontractors accordingly, Plaintiff would not have advanced him the money for labor and materials. Therefore, Plaintiff has proven all of the necessary elements under § 523(a)(2)(A) to except its claim from discharge.

§ 523(a)(4)
The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for fraud or defalcation while acting in a fiduciary capacity. . . ." 11 U.S.C. § 523(a)(4). To prevent the discharge of debt under § 523(a)(4), it is incumbent upon Plaintiff to establish the following two elements: (1) that a fiduciary relationship existed between Debtor and Plaintiff; and (2) that Debtor committed fraud or defalcation in the course of that fiduciary relationship. See In re Montgomery, 236 B.R. 914, 922 (Bankr.D.N.D.1999).
With regard to the first element, whether a relationship is a fiduciary relationship within the meaning of section 523(a)(4) is a question of federal law. In re Cochrane, 124 F.3d 978, 984 (8th Cir. *899 1997), cert. denied, 522 U.S. 1112, 118 S.Ct. 1044, 140 L.Ed.2d 109 (1998). The fiduciary relationship must be one arising from an express or technical trust. In re Long, 774 F.2d 875, 878 (8th Cir.1985). Merely labeling a relationship a "trust" is insufficient to create fiduciary capacity under the bankruptcy code. In re Herndon, 277 B.R. 765, 769 (Bankr.E.D.Ark.2002). With reference to § 523(a)(4), the Eighth Circuit Court of Appeals has stated that "[i]t is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship." Long, 774 F.2d at 878-79. A mere contractual relationship is less than what is required to establish the existence of a fiduciary relationship. Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir.1993).
Bankruptcy courts regularly look to state law to determine whether a fiduciary capacity exists. In re Long, 774 F.2d 875, 878 (8th Cir.1985); In re Kondora, 194 B.R. 202, 208 (Bankr.N.D.Iowa 1996). "The `technical' or `express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law." In re Cook, 263 B.R. 249, 255 (Bankr.N.D.Iowa 2001). State law is therefore important in determining whether a party has acted in a fiduciary capacity. Id.
Under Iowa law, a trust has been defined as "a fiduciary relation with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as the result of a manifestation of intention to create it." State v. Caslavka, 531 N.W.2d 102, 105 (Iowa 1995). This definition of trust imposes a requirement that there be "some objective manifestation of an intention to create the relationship as defined in the quoted definition." Id. A fiduciary relationship cannot be assumed without an objective manifestation of intent to create it. Id. One indicia of a trust relationship is the requirement of a separate bank account for the receipt and holding of trust funds. In re Pehkonen, 15 B.R. 577, 581 (Bankr.N.D.Iowa 1981).
In State v. Galbreath, 525 N.W.2d 424 (Iowa 1994), the plaintiffs entered into a construction contract with a roofing contractor in which the plaintiffs were required to tender a down payment for materials. The contractor did not perform the work and did not return the down payment. The State charged Galbreath with a violation of Iowa Code § 714.1(2) (1991), which provides, in pertinent part, that a person commits theft when the person [m]isappropriates property which the person has in trust, or property of another which the person has in the person's possession or control . . . by using or disposing of it in a manner which is inconsistent with or a denial of the trust or of the owner's rights in such property. . . . Id. at 426.
The court in Galbreath stated "that in the context of an ordinary construction contract, cash advanced as a down payment will not qualify as `property of another' because title and possession are transferred from the owner to the contractor  not in trust  but outright." Id. at 427. Furthermore, Galbreath rejected the conclusion of a Washington appellate court in State v. Joy, 121 Wash.2d 333, 851 P.2d 654, 659 (1993), that, if a contract suggests that funds tendered by a buyer will be used to purchase specifically described materials, it is a breach of a trust to use the funds for other purposes. Galbreath, 525 N.W.2d at 426. The court concluded that "while perhaps satisfying, [the outcome in Joy] can only be reached through a legal *900 fiction of converting an unconditional transfer to a transfer in trust." Id.
In the instant case, Plaintiff cannot point to an express written agreement or an Iowa statute that establishes a fiduciary relationship. The proposals submitted by Debtor did not impose an express or technical trust. The proposals did not require Debtor to use these funds to pay subcontractors. Moreover, the evidence presented does not indicate that Debtor was required to open a separate business checking account. Finally, Debtor's mere assertions that he would use the funds provided by Plaintiff for materials and supplies does not suffice to create a fiduciary relationship. Because Plaintiff cannot show the existence of an express or technical trust, this Court concludes that the relationship between Debtor and Plaintiff was merely contractual. Accordingly, § 523(a)(4) does not prevent discharge of Debtor's debt.

§ 523(a)(6)
Section 523(a)(6) provides that debts for "willful and malicious injury by the debtor to another entity" can be excepted from discharge. 11 U.S.C. § 523(a)(6). "[N]ondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). A willful and malicious conversion is an "injury" under § 523(a)(6). In re Ewing, No. 92-11343LC, Adv. No. 92-1231LC, slip op. at 6 (Bankr.N.D.Iowa Nov. 3, 1993); In re Holtz, 62 B.R. 782, 785 (Bankr.N.D.Iowa 1986).
In his post trial brief, Debtor acknowledges that he converted Plaintiff's funds to his personal use and he had no right to do so. He agrees the Court should enter judgment under a conversion theory. As such, the elements of § 523(a)(6) are deemed proven and the debt is nondischargeable as arising from willful and malicious conversion. Debtor makes this admission to the extent of $10,145.83 in damages. Plaintiff asserts the entire amount of the state court judgment, $18,760.85, should be excepted from discharge.

DAMAGES
Ordinarily, in a dischargeability proceeding, a state court judgment is res judicata as to the validity and amount of the debt. In re Mason, 175 B.R. 299, 303 (Bankr.W.D.Mo.1994). This holds true even when the judgment was entered by default. In re Sullivan, 122 B.R. 720, 723 (Bankr.D.Minn.1991). The bankruptcy court's job in a nondischargeability case is to determine the dischargeability of a debt. In re Hauser, 72 B.R. 165, 167 (Bankr.D.Minn.1985).
The court in In re Kemp, 234 B.R. 461, 466 (Bankr.W.D.Mo.1999), aff'd in part and rev'd in part on other grounds, 242 B.R. 178 (8th Cir. BAP 1999), stated that "this Court cannot ignore the state court's judgment. To do so would not only violate the principles of res judicata, but quite possibly the Rooker-Feldman doctrine, which precludes a federal court from engaging in impermissible appellate review of state court decisions." In In re Goetzman, 91 F.3d 1173, 1177 (8th Cir.1996), the court held that
an examination of the [debtors'] respective claims leads to the conclusion that the federal claims are inextricably intertwined with the state court decision. The heart of the state court proceedings was a determination of the amount [debtors] owed to [plaintiff]. The [debtors] themselves brought the declaratory judgment action to determine the amount owed under the mortgage. . . . *901 This attempted relief is exactly what is barred by the Rooker Feldman doctrine.
See also, In re Ferren, 227 B.R. 279, 283 (8th Cir. BAP 1998); In re Hatcher, 218 B.R. 441, 447-48 (8th Cir. BAP 1998).
In this case, however, only a portion of the state court judgment may be attributable to conduct which underlies the nondischargeable debt. The evidence presented does not indicate which portion of Plaintiff's state court judgment is based on breach of contract, fraudulent misrepresentation, or conversion. Somewhat analogous facts occurred in In re Cornner, 191 B.R. 199, 206 (Bankr.N.D.Ala.1995). In Cornner, the court found that a judgment previously entered against the debtor in a state court fraud action was not res judicata as to the amount of debt to be excepted from discharge. Id. The state court judgment was based on two separate transactions between debtor and the judgment creditor, only one of which triggered a statutory exception to discharge. Id. Additionally, the plaintiff failed to establish which portion of the judgment was based on breach of contract and which was based on fraud. Id.
Similarly, the state court judgment here is not res judicata as to the amount of the debt to be excepted from discharge. The amount of the state court judgment which is nondischargeable must be determined. The damages award for the breach of contract claim are dischargeable. The issue is the appropriate amount of damages to apportion to the fraudulent misrepresentation and conversion claims. The appropriate amount of damages can be gleaned from the bank statement and the checks written by Debtor. Debtor misappropriated $12,080.99 of Plaintiff's funds for non-business expenditures. As such, this Court concludes that $12,080.99 of the debt is nondischargeable.
WHEREFORE, Plaintiff Zio Johnos' complaint to except debt from discharge under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) is GRANTED.
FURTHER, Plaintiff's claim to except debt from discharge under 11 U.S.C. § 523(a)(4) is DENIED.
FURTHER, the amount of Plaintiff's Iowa District Court judgment that is nondischargeable is $12,080.99, plus interest.
FURTHER, judgment shall be entered accordingly in favor of Plaintiff Zio Johnos, Inc. and against Defendant/Debtor Ramon K. Ziadeh.